REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2147

September Term, 2015

_____

ROBERT DiCICCO, et al.

v.

BALTIMORE COUNTY, MARYLAND

_____

Wright,
Berger,
Thieme, Raymond G., Jr.
    (Senior Judge, Specially Assigned),

JJ.
_____

Opinion by Thieme, J.
_____

Filed:  March 29, 2017

The Baltimore County Circuit Court reduced to judgment eight separate administrative orders imposing civil penalties totaling $156,500, against Robert and Emily DiCicco, appellants, for various Baltimore County building code violations on rental property jointly owned by appellants.  Proceeding *pro se*, appellants raise four issues on appeal:

I.      Whether appellants were denied due process and equal protection when notices for civil violations, fines, and hearings were mailed to the wrong address;

II.     Whether Baltimore County had the authority to enforce permit violations by way of a hearing, fines, and judgments;

III.    Whether Baltimore County had the authority to institute judicial proceedings against them; and

IV.     Whether the fines assessed against appellants by Baltimore County were illegal and unconstitutional.

For the reasons that follow, we shall affirm.

**FACTS**

On March 20, 2012, Baltimore County, appellee, filed a complaint in the Circuit Court for Baltimore County to reduce to a judgment eight administrative orders imposing civil penalties against appellants.  A one-day bench trial was held on September 11, 2015, at which Robert DiCicco appeared without counsel; his wife, Emily DiCicco, did not appear. [1]  During the trial, testimonial and documentary evidence was admitted and the following was established.

Appellants own a row house that they rent at 403 Murdock Road in the Rodgers Forge neighborhood of Baltimore County.  Between 2009 and 2011, eight hearings were

_____

[1] We shall use the singular "appellant" when referring to Robert DiCicco.

held and administrative orders issued imposing civil penalties against appellants for failing to obtain a rental license and maintain the Murdock property in violation of the Baltimore County Code ("BCC"). The civil penalties totaled $156,500. The order date, type of BCC violation, and civil penalties are as follows:

1. Oct. 5, 2009 - Failure to obtain a rental housing license - $1,000

2. June 14, 2010 - Failure to make various code repairs from February 27 to June 2, 2010 (broken/missing gutters/downspouts; repair rotten wood on facia, soffits and garage door; missing slates on roof; broken windows; repaint peeling and flaking paint; masonry work) - $20,000

3. Sept. 29, 2010 - Failure to make any of the above code repairs from around August 3 to September 22, 2010 - $25,000

4. Nov. 16, 2010 - Failure to obtain a rental housing license - $1,000

5. May 19, 2011 - Various plumbing code violations from February 17 to March 23, 2011 - $7,000

6. July 27, 2011 - Various plumbing code violations from March 24 to June 10, 2011 - $40,5000

7. Oct. 5, 2011 - Failure to obtain a rental license and failure to appear - $2,000

8. Oct. 12, 2011 - Various plumbing code violations from June 11 to October 11, 2011 - $60,000

None of the penalties have been paid.

Adam Whitlock, a Baltimore County Code Enforcement coordinator, testified about his agency's procedure for handling residential code violations and enforcement. He explained that after his office receives a complaint about a property, an inspector is sent to the property to determine if there is a code violation. If a code violation is found, a correction notice is issued giving the owner a certain period of time to correct the violation.

2

After that time period, another inspection is done to see if the violation has been corrected. If the violation has not been corrected, a citation is issued with a hearing date. At the hearing, an administrative law judge makes findings and issues an administrative order, which may include a civil fine.[2] If the fine is not paid within 30 days, the fine becomes a lien on the property.

Whitlock further testified that the standard procedure for notifying a property owner about a residential code violation is to determine who owns the property by looking to the records of the Maryland Department of Assessments and Taxation (MDAT). The correction notice and citation with hearing date are then both posted on the property and sent by first class mail to the address given by the property owner and listed in the MDAT records. All citations, violations, and notices regarding the Murdock property were sent to 405 Central Avenue in Towson, the address listed in the MDAT.

Appellant testified that for the last 40 years, he and his wife have lived at 12231 Harford Road, in Glen Arm, Maryland, and that they have never lived at either the Murdock or Central Avenue address – he practiced law until 2002 at the Central Avenue address. He did not remember designating the Central Avenue address as the MDAT address of record for the Murdock residence. Appellant testified that he never received the corrections notices or citations for the Murdock residence, except the eighth violation. It was established, however, that in addition to the eighth violation, appellant had notice of the

---

[2] Effective January 16, 2011, administrative law judges replaced code enforcement hearing officers. *See* BCC § 3-6-101(h).

3

second violation because the citation hearing was rescheduled at appellant's written request, although appellants ultimately failed to appear at the rescheduled hearing.

Appellant argued that the County should have sent the notices to his personal residence in Glen Arm, suggesting that the County was aware of the Glen Arm address because it sent the tax bill for the Murdock residence to the Glen Arm address. A manager with the Office of Budget and Finance, whose duties include tax collection, disputed appellant's suggestion. The manager explained that tax bills are "sent to whatever address you as a property owner put on file to have them sent to." The manager testified that tax bills for the Murdock residence are sent to the Central Avenue address, which is the address listed in the MDAT.

The owner and resident of a rowhouse on the same street as the Murdock residence testified that during the 16 years he has lived on the street, the Murdock residence has been "falling apart and nothing substantial has ever been done to improve [it]." He testified that the house has brought down morale in the neighborhood, depressed property values, and has been a "blight on the community." He brought pictures taken that day of the Murdock house that he testified showed that no repairs have been done to the house – the roof is falling apart, the garage has duct tape across the panels instead of glass, and the house has several areas of peeling paint.

After the presentation of the evidence, appellant argued that he and his wife should not have to pay the civil penalties assessed in the administrative orders. The focus of his argument was lack of notice. He did, however, raise two additional arguments in passing: 1) the County can only enforce a civil penalty by placing a lien on the property, not by

4

reducing the civil penalties to a court judgment, and 2) the civil penalties were unreasonable because they exceeded the value of the property. After the parties' arguments, the court entered judgment against appellants, jointly and severally, for $156,500. This appeal followed.

## DISCUSSION

### I.

Appellants argue that they were denied due process and equal protection because the notices regarding the BCC violations were mailed "to the wrong address." The County responds that appellants have waived their equal protection claim because they did not raise it below, and appellants' remaining due process argument is without merit. We agree with the County that appellants have failed to preserve their equal protection claim on appeal because they did not raise it below. *See* Md. Rule 8-131(a)("Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court[.]"). We also agree that appellants' due process claim is without merit.

We review the lower court's factual findings under the clearly erroneous standard and its legal conclusions *de novo*. *Griffin v. Bierman*, 403 Md. 186, 195 (2008). *See also* Md. Rule 8-131(c)("When an action has been tried without a jury, the appellate court will review the case on both the law and the evidence. It will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses.").

5

"[S]tate action affecting property must generally be accompanied by notification of that action[.]" *Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S. 478, 484 (1988) (citation omitted). The requirements of due process and the need to balance the interest of the State against the individual interest sought to be protected by the Fourteenth Amendment are fundamental requirements. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). The standard of due process required in a proceeding which is accorded finality "is notice *reasonably calculated*, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (citations omitted)(emphasis added). "The proper inquiry is whether the state acted reasonably in selecting means likely to inform persons affected, not whether each property owner actually received notice." *Griffin*, 403 Md. at 197 (quotation marks and citation omitted).

The United States Supreme Court disfavors notice solely by publication. *See Mennonite Board of Missions v. Adams*, 462 U.S. 791, 795-800 (1983). *See also City of New York v. New York, N.H. & H.R. Co.*, 344 U.S. 293, 296 (1953)( "Notice by publication is a poor and sometimes a hopeless substitute for actual service of notice."). The Court of Appeals has also disfavored notice by posting solely to a vacant lot. *St. George Antiochian Orthodox Christian Church v. Aggarwal*, 326 Md. 90, 94-95 (1992). However, "[n]otice by mail is ordinarily presumed to be constitutionally sufficient." *Griffin*, 403 Md. at 198 (quotation marks and citations omitted). "In general, 'reasonably calculated notice' under *Mullane* is met where the government sends a notice to the address provided by a party

6

pursuant to a legal requirement to provide the government with an address." *Id*. (quotation marks and citation omitted).

Appellant argues that he never received notice of the hearings for he had no office or residence at the Central Avenue address. It does not matter that appellants did not actually receive notice, only that the notice attempt was reasonable. Here, Baltimore County posted to the Murdock residence and mailed to the Central Avenue address the correction notices and citations with hearing dates for each of the eight violations. We note that this is above the notice set forth in the BCC, which requires notice to be served in only one of three ways: posting the citation on the property, sending the citation by first class mail, *or* hand delivering the citation to the violator. *See* BCC § 3-6-205(c)(2). Further, appellant provided the Central Avenue address to the MDAT as the address for notice. Accordingly, we find no error by the lower court in ruling that no due process violation had occurred.

## II.

Appellants next argue that Baltimore County "had no authority to enforce Building permit violation by hearing, fine, or judgment." From here, appellants argue two points.

First, appellants appear to attack the total amount of the fines. Appellants cite BCC § 35-2-304, which provides that a person may not "erect, construct, repair, alter, remodel, remove, or demolish a building or structure" in the county without first obtaining a permit. Section 35-2-304(1). Appellants cite another BCC section that states, a person who violates the above section is subject to a civil penalty of $1,000, plus the county may place a lien on the property for costs incurred by the county to make the building safe. *See* §§

7

35-2-304(b), (d) and 35-2-203(b). Appellants then argue: "In this case the maximum fine (the precise fine levied by the judge hearing the permit case . . .) for the main complaint of Baltimore County, failure to obtain building permit is $1000.00. No other remedy or proceeding is authorized. Therefore the outrageous fines, totaling $177,000.00 are illegal."[3]

Appellants' argument that the most they can be fined is $1,000 was not raised below, and therefore, is not preserved for our review. *See* Md. Rule 8-131(a). Even if appellants had presented and therefore preserved this argument for our review, it is without merit. Appellants' citation to the BCC sections regarding the failure to obtain a "building" permit is irrelevant. Appellants were fined for failure to obtain a "rental license" permit, for which the maximum fine is $1,000 fine per day. *See* BCC §§ 35-6-105, 35-6-112. Additionally, the appellants were fined for various building code violations, for which they may be fined either $200 or $500, per violation per day. *See* BCC §§ 35-2-406(b) and 35-5-215(a)(1). Appellants' limited argument fails to explain why the $156,500 judgment is illegal.

Second, appellants argue that Baltimore County has only one remedy for enforcing civil penalties, a lien against the property, because Baltimore County has no authority to seek a judgment for civil penalties, in addition to a lien. Baltimore County responds by citing *Anthony Plumbing of Maryland, Inc. v. Attorney General of Maryland*, 298 Md. 11, 21 (1983), which states: "[A]s both the courts and Legislature of this State have indicated,

---

[3] The amount sought by appellees is $156,500, which reflects the eight violations set out above. We are not sure how appellants arrive at the $177,000 figure.

an order for civil penalties creates a debt recoverable by an action of law." The action is a "common law action of debt." *Id.*

Appellants respond that *Anthony Plumbing* is inapplicable, arguing:

> [*Anthony*] is inapposite here because in *Anthony*, the award of a fine was in the nature of a debt, but not a debt reduced to judgment. It was not a lien on the assets of *Anthony*. Here the County assessed a fine which was reduced to a lien on the property. It is a lien on the property as if it were a judgment. The court already has one judgment and should not be allowed a second one for the same facts. *Anthony*, *supra*, is not applicable in this case because the administrative proceedings produced a [sic] fines which were converted to a judgment of a lien, which is superior to all claims. It has resulted in an imposition and placed their property in jeopardy.

We are not persuaded by appellants' argument but are persuaded that both the fine in *Anthony Plumbing* and the fines in this case were civil penalties that, under the reasoning of *Anthony Plumbing*, created a debt that may be reduced to a collectible court judgment under the common law.

## III.

Appellants argue that Baltimore County does not have the authority to enforce its code or to institute any proceedings against them. Again, appellants put forth two arguments. First, appellants argue that the agency that enforces building code violations (executive branch) also has control over the administrative law judges (judicial branch) and that the failure to separate these branches of government is in contravention of the Md. Const., Decl. of Rts, Art. 8, which separates judicial power from administrative agencies or executive power. Appellants did not raise this argument below, and it is therefore, not preserved for our review. *See* Md. Rule 8-131(a).

9

Second, appellants argue that Baltimore County cannot enforce laws that seek to regulate dangers to tenants of rental properties because State law has preempted this field with its own laws to remedy and regulate building dangers. *See* Md. Code Ann., Real Property, §8-211 (setting out the duty of landlords to repair/eliminate serious conditions and defects in residential dwelling units). Again, appellants have failed to preserve this argument for our review because they did not raise it below. *See* Md. Rule 8-131(a).

## IV.

Lastly, appellants argue that the fines assessed against them were illegal and unconstitutional. Citing *Aravanis v. Somerset County*, 339 Md. 644 (1995), *cert. denied*, 516 U.S. 1115 (1996), appellants argue that the fines were excessive and violated Article 25 of the Md. Decl. of Rights and the Eighth Amendment of the United States Constitution. To the extent that appellants have preserved this argument for our review, we can quickly dismiss it. *Aravanis* is inapplicable because it concerns whether an action for civil forfeiture of real property involved in the commission of a drug offense violates the Md. Decl. of Rights and U.S. Constitution. This is not a civil action to forfeit real property. To the extent that appellants then argue and attempt to bootstrap all their earlier arguments to support their claim that the fines are illegal and unconstitutional, their argument is meritless for the reasons set out above.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANTS.**

10